State, Hoagland v. Labaw.

---

THE STATE, HENRY V. HOAGLAND, RELATOR, v. DAVID S. LABAW.

1. When a township has decided to vote by ballot, it requires a majority of all the votes cast at a subsequent annual town meeting to change the mode of voting.

2. If the relator, in a case of *quo warranto*, is entitled to hold his office until another shall be chosen and legally qualified in his stead, it is immaterial whether he was duly elected a second time.

An information in the nature of a *quo warranto* was filed in this case, and a statement. of facts agreed upon by the counsel of the parties, the material parts of which are set forth in the opinion of the court.

The questions arising thereupon were argued before Justices ELMER, BEDLE, and DALRIMPLE, by *J. F. Hageman* for the relator, and *P. D. Vroom* for the defendant.

The opinion of the court was delivered by

ELMER, J.    It appears that the inhabitants of the township of Montgomery, in the county or Somerset, in the year 1862, resolved that the next town meeting vote by ballot, and continued afterwards to do so, at their annual meetings, regularly, until after 1866.    At the annual town meeting of this year two hundred and eighty-six ballots were cast, and there was printed or written upon one hundred and nine of them, the words, " next town meeting *viva voce*," the other ballots cast having on them nothing on this subject.    At the annual town meeting held April 8th, 1867, a portion of the inhabitants voted by ballot, the polls being opened, pursuant to advertisement, at the hour of eight A. M., and closed at three P. M.    These inhabitants cast one hundred and twenty-three ballots, on one hundred and nineteen of which the relator was voted for as chosen freeholder of said township, there being but one such officer in that county for each township.    Mr. Hoagland had held the same office the preceding year.    A regular certificate of his election, as well as of the other proceedings, was duly made, and delivered to· the clerk of the county, but was not filed, because, as he states, one return from said township had been previously filed.

On the same eighth of April, between sixty and eighty of the inhabitants met at the usual place of holding town

meetings, and between the hours of eleven and two, duly organized and proceeded to transact the township business by *viva voce* votes, and David S. Labaw, the defendant, was then, in that manner, elected chosen freeholder for said township. A certificate of the proceedings of this meeting was duly made by the officers, delivered to the clerk of the county, and by him filed. Mr. Labaw took his seat in the board of chosen freeholders of said county, at their first annual meeting, and continues to act as such officer. Mr. Hoagland presented himself at the second meeting of said board, held May 20th, and claimed his seat, but was not permitted to act by the board.

The first question discussed upon this state of facts has been, whether the *viva voce* town meeting, at which Mr. Labaw was elected, was duly holden. The act of March 22d, 1860, (*Nix. Dig.* 887,)* which was extended to all the townships of the state in 1862, (*Pamph. L.* 244,) directs that when a majority of the legal voters assembled at any annual town meeting, shall decide that the next or subsequent town meetings thereafter shall be held by ballot, they shall be so held, and not otherwise, until it shall be determined in the same manner that their next subsequent annual town meetings thereafter shall not be held by ballot. This act prescribes what officers shall be elected by ballot, and what money the inhabitants may vote to raise, upon the same ballot, and enacts that a plurality of votes shall be sufficient to elect any officer, but that a majority shall be required to determine an amount of money to be raised or specified. It thus appears that to change the mode of voting from the ballot, the meeting must decide to do so, in the same manner they decided to adopt the ballot—that is, by a majority of the legal voters assembled. The majority to make this decision, in my opinion, must be the same as the majority required to determine an amount of money to be raised—that is, a majority of those casting ballots. They are the voters assembled, in the meaning of the law.

The twelfth section of the act incorporating townships,

---

* All elections now by ballot. *Rev., p.* 341, § 27.

(*Nix. Dig.* 875,)* requires a majority of votes to elect each officer. It is true, as urged for the defendant, that by the well established principles applicable to the election of officers by corporations, when a meeting is duly assembled, those who do not choose to vote, or who voluntarily throw away their votes by casting them for persons known to be incapable of serving, are not counted, in ascertaining the majority. *Grant on Cor.* 69, 70, 71, and cases cited. But the act of 1860, authorizing voting at town meetings by ballot, requires all the votes, for all lawful purposes, to be on the same ballot, and when it requires a majority of the votes to decide any question, plainly means a majority of all the ballots cast. Any other construction would involve the absurdity of authorizing a very small minority, who thought proper to place on their tickets a change of the manner of holding subsequent town meetings, or a sum of money to be raised for supposed necessary township purposes, to decide such a question, without the knowledge and against the wishes of a large majority.

Voters who voluntarily abstain from voting, or who give illegal votes, may properly be considered as acquiescing in what others do in a legal manner; but I am not aware that this principle has ever been applied, nor do I think it can justly be applied to a case where it is not previously ascertained by the law, or by some other proceeding, what officer or what subject was to be voted for. I am, therefore, clearly of opinion that the *viva voce* town meeting, attempted to be held on the eighth of April, at which Mr. Labaw was declared to have been elected chosen freeholder, was not legally held, and that he is not entitled to hold that office.

Another question is, whether Mr. Hoagland is entitled to the office he claims. It is insisted that he was not duly elected in April, 1867, because the polls were not opened at seven o'clock in the morning and closed at sunset, as is said to be required by the act of March 9th, 1866, (*Pamph. L.* 284,) nor were they opened at nine, as required by the act of 1860. But it is not necessary to decide this question. If he was

* *Rev.*, p. 1195, § 12.

not duly elected, no other person was, and he, therefore, pursuant to the twelfth section of the act incorporating townships, is entitled to hold his office by virtue of his election in 1866, which is not questioned, until another shall be chosen and legally qualified in his stead. And besides, the question whether the relator is a proper person to dispute the right of another to hold an office, more properly arises when the application is to allow the writ.

As the case is presented, there must be judgment for the state.