STATE v. MORGAN.

(Filed October 4, 1904).

1. BAIL—*Forfeitures—Scire Facias.*

The entry of the forfeiture of a recognizance in a criminal case cannot be contradicted or traversed by an answer or a plea to a *scire facias* issued to enforce the forfeiture.

2. BAIL—*Motions—Pleadings—Scire Facias.*

Where the recognizance in a criminal case is entered on the records of the court as forfeited, and *scire facias* is issued to enforce the forfeiture, an answer denying the truth of the record, though informal, is equivalent to a motion to set aside the entry, when that appears to have been the intention of the defendants.

3. BAIL—*Penalties—Forfeitures—The Code, sec. 1205.*

An application for the reduction or remission of the penalty in forfeited recognizances by the direct provisions of the statute is addressed to the discretion of the court, and its action is not reviewable.

4. BAIL—*Penalties.*

Where a motion is made to set aside the entry of forfeiture of a recognizance, its refusal does not prevent the court from reducing or remitting the penalty.

5. BAIL—*Continuances—Recognizances.*

The continuance of a criminal case does not release the recognizance given for the appearance of the defendant.

SCIRE FACIAS by the State against Lawrence Morgan and others, heard by *Judge Frederick Moore,* at February Term, 1904, of the Superior Court of WILSON County.

This is a proceeding by *scire facias* to enforce a forfeited recognizance. The respondents had entered into a recognizance in the sum of $6,000, conditioned that the de-

136——38

fendant Morgan should make his personal appearance at the Superior Court on the second Monday of December, 1903, to answer a criminal charge for murder and not depart the same without leave. On the record of the Court at said December Term is this entry: "The defendant Lawrence Morgan is called and failed. Judgment *nisi, sci. fa.* and *capias.* The *scire facias* was issued and served on the defendants and they filed an answer and affidavits in support thereof, the substance of which is as follows: "Lawrence Morgan appeared at December Term from day to day until the final adjournment of the Court, and on Monday of said term his case was called for trial and continued—Morgan being present and answering when his name was called, and insisting on a trial. The Court adjourned for the term on Thursday afternoon, and immediately thereafter the presiding Judge left the county for his home. At noon on Thursday, Morgan not having given a new bond, the fact was called to the attention of the Solicitor, and the crier of the court was directed to call Morgan, whereupon the court crier went to the window to obey the order of the Court, when the crier was informed by counsel for Morgan that it was unnecessary for him to be called, as he was then present at the bar of the Court. He answered when he was called, and went up to the rail of the bar near the Clerk's desk and was standing there when the forfeiture was entered, and heard the Judge direct the Clerk to make the entry. His presence in court was known to the presiding Judge, to the Solicitor, the Clerk and the Sheriff. It was ordered by the Court that Morgan should have until the following Monday within which to give his bond for his appearance at the next term, and then the forfeiture of his bond was entered upon the records of the Court while Morgan was present at the bar of the Court. Morgan remained in the town of Wilson several days after the adjournment of court, making no attempt to

conceal the fact of his presence, as he was seen upon the streets of the town daily until he left. The respondents were not advised of the action of the Court in declaring the forfeiture, but were afterwards advised that they had been relieved of any liability as sureties of Morgan by his appearance at said December Term and by the action of the Court as before stated.

The State filed affidavits and exhibits which tended to show that Morgan was called by the court crier and failed to answer, and thereupon the forfeiture was directed by the Court to be entered and was accordingly entered, and that the record does in fact speak the truth. Before the entry was made, but after Morgan was called and failed to answer, it was stated to the Court by one of his counsel that his sureties were out of town, and he could not therefore renew his bond until the next Monday, and counsel requested the Court not to enter the forfeiture, which request the Court refused, but directed the forfeiture to be entered in the regular form, and instructed the Clerk that if Morgan renewed his recognizance by the next Monday night he need not issue the *sci. fa.* and *capias.*

The Solicitor objected to so much of the respondents' answer and affidavits as tended to contradict the entry of forfeiture. The Court finally ruled that said matter could not be considered for that purpose, and, upon a suggestion by counsel of the respondents that the same might be treated as an application for relief under section 1205 of The Code, the Court declined so to treat it, but without prejudice to the right of the respondents to apply hereafter for relief under that section.

Upon consideration of the record and the answer to the *sci. fa.*, after excluding the matter mentioned above, the Court adjudged that the State recover the full amount of the

recognizance and the costs of the proceeding, and that execution issue therefor.    The respondents excepted and appealed.

.  *Robert D. Gilmer, Attorney-General,* for the State.
.  *F. A. Woodard, Shepherd & Shepherd* and *Connor & Connor,* for the defendants.

WALKER, J., after stating the facts.    The obligation of Morgan and his sureties for his appearance at court was treated in the argument before us as a recognizance, though it has the form and appearance of a bond, and it is so called in one part of the record, while in the *scire facias* it is referred to as a recognizance.    *State v. Houston,* 74 N. C., 549; *State v. Jones,* 88 N. C., 683.    There was much said in the discussion here about the technical distinction between the two in respect to the method of their enforcement, but we think it can make little or no practical difference, in the view we take of the case, whether it is a bond or a recognizance, which is a debt of record, and whether, therefore, it was erroneous to enter a judgment *nisi* instead of issuing a *scire facias* merely, and requiring the respondents to show cause why an execution should not issue, that being the proper remedy to enforce payment of the amount due on a forfeited recognizance.    *State v. Mills,* 19 N. C., 552; *State v. Smith,* 66 N. C., 620.

Whether it is a bond or a recognizance, the entry of the forfeiture became a part of the record, a fact averred in the record, and it cannot be contradicted or traversed by an answer or a plea to the *scire facias* issued to enforce the forfeiture.    The fact of the defendant's failure to appear is conclusively established by the entry, and the respondents will not be heard to impeach the record, as it stands, in a collateral way, and a suit or *scire facias* founded on the forfeiture is a collateral proceeding.    Their remedy, if they wished to put the truth of the matter in issue, was by motion

to set aside or vacate the entry, or, as is sometimes said, to reverse the order of forfeiture. This is but the application of an elementary principle. A record imports absolute verity and is conclusive concerning the matters to which it relates. So long as it stands unreversed, the recitals as to what was actually done in the Court cannot be contradicted or varied except upon application to the Court to correct the record so that it will speak the truth. When it is said by the Court in *State v. Mills, supra,* which was cited and relied on by the respondents that "a recognizance is in the nature of a conditional judgment, subject only to such matters of legal avoidance as may be shown by plea, or to such matters of relief as may induce the Court to remit or mitigate the forfeiture," it was not intended that a denial of the truth of the record could be thus set up by way of plea or answer to a *scire facias.* Matters of "legal avoidance" there referred to are such as, being entirely consistent with the truth of the facts stated in the record, furnish a valid legal excuse for the failure of the defendant to appear according to the condition of his recognizance. The sureties, for example, could show in answer to the *scire facias* the death of the principal before the time for his appearance had arrived, or that he had been arrested under other process issued at the instance of the State, or that he had become insane, and there are still other matters which could be alleged and proved and which would constitute in law a legal avoidance of the forfeiture. But it will be observed that all pleas of the kind mentioned are not only consistent with the truth of what is averred in the record, but they are predicated upon the assumption of such truth. Where it is sought to revive a dormant judgment by *scire facias,* or, under our present procedure, by motion for leave to issue execution, it is not competent, in answer to the *scire facias* or the motion, to attack the judgment or impeach its correctness, as, being a record, it stands for verity and can only be avoided

by a direct proceeding in the Court which made the record to vacate it. The very question under discussion has, we find, been frequently considered by the courts of other States and they have, so far as we can ascertain, invariably decided that such a defense as that set up in this case cannot be entertained, as a few extracts from some of those decisions will show. "A record of the Court into which a recognizance is returned, that the principal made default, cannot be controlled or contradicted by parol evidence on a *scire facias* against his bail." *Com. v. Slocumb,* 80 Mass., 395. "The defendant could not, however, be allowed to prove by parol that the prisoner was in attendance at the Court ready to answer to his recognizance. The appearance of the prisoner must be shown by the record. The effect of the evidence would have been to contradict the record by parol evidence. The record shows that the prisoner being called to answer the indictment against him according to the tenor of his recognizance made default of his appearance. His appearance must be shown by evidence of as high character as that which shows his default." *State v. Clemons,* 9 Iowa, 534. "If the facts set forth in these answers are true, and there was not in fact any calling and forfeiture of the recognizance, the defendant should have applied to the Court declaring the forfeiture to vacate the entry; but while that record remains the rules of evidence and sound public policy will not permit it to be contradicted by parol testimony." *Calvin v. State,* 12 Ohio St., 60. "Mistake or fraud in making up a record can neither be averred nor proved by parol evidence in a collateral proceeding nor in an action founded on it. The only mode of relief is through the Court where the record is thus erroneous. The record must be received as absolute verity and speak for itself. If wrong, the only mode of having it corrected is by application to the Court where the proceeding or judgment was had, to have it reformed according to the truth or vacate it as may be requisite.

STATE *v.* MORGAN.

In no other manner can a party or privy to the judgment or proceeding be relieved." *Clark v. McCommon,* 63 Pa., 469. "The record of the default is conclusive evidence of the fact, and of course not subject to be impeached, controverted or affected by extrinsic evidence." *State v. Gilmore,* 81 Me., 405. "It is a maxim in law that there can be no averment in pleading against the validity of a record, although there may against its operation. Each of these pleas attempted to question the verity of the record of the Circuit Court. We understand the law to be well settled that the record imports absolute verity and no averment can be taken against it. For this reason the pleas were bad and the demurrer properly sustained." *Wellborn v. People,* 76 Ill., 516. The courts in the cases cited were speaking with reference to an action brought or a *scire facias* issued upon a forfeited recognizance, and the pleas and evidence available to a respondent in such a proceeding. See also, *Eddinger v. Miller,* 153 Pa., 457; *State v. Wenzel,* 77 Ind., 428; *Maynes v. Brockway,* 55 Iowa, 457, The proper course was pursued and approved by the Court in *State v. Hayes,* 104 La., 461.

But while the respondents have not selected the remedy which the law provides for such a case as the one presented by the averments of their answer, and while a strict enforcement of the rules of pleading and procedure would be fatal to their plea and deprive them of any relief save what the Court may grant in the exercise of its discretion or as an act of mere grace, we yet think it would be taking too narrow a view of the case to decide it upon such a technical ruling, as it sufficiently appears from the record that the respondents intended to ask for relief upon the ground that the record did not speak the truth of the matter and that they wished to have that question passed upon in some competent way. If it be true, as alleged, that the defendant Morgan fully kept and complied with the condition of his recognizance and appeared from day to day during the term, answered

when he was called to the bar, and in all things was ready to do and perform what was required of him and to the extent that he was bound, we do not think the State should exact the penalty of the appellants simply because in some slight particular they have mistaken the form of their remedy. Upon that state of facts they would owe nothing, and they should be permitted to acquit themselves of liability if they can.

It was suggested below that the answer and affidavits be considered as an application for relief from the forfeiture under section 1205 of The Code, which extends only to a reduction or remission of the penalty. Such an application, by the terms of the statute, is addressed to the discretion of the Court, and the granting of it is a mere act of favor, and the Court can exercise its clemency with such conditions as it may see fit to impose. We cannot review its action.

While the evidence offered could not be received to impeach the record, and while the respondents have not proceeded very regularly in seeking relief, yet we think that it sufficiently appears from the case that their purpose was to have the truth found and declared by the Court, to the end that they might be relieved from the forfeiture. They must have intended to impeach the entry, and all that was needed to present the question properly to the Court was the formal motion to vacate it. When they failed to obtain relief by invalidating the record against them, they then appealed to the Court to exercise its discretion in their favor and remit the penalty.

Upon a review of the whole matter, we think the ends of justice will be subserved by setting aside the judgment and permitting the respondent to move to vacate the entry of forfeiture. The Court can then find the facts upon the evidence offered by the parties and the case can be heard upon its merits. If the Court, upon the facts found, should refuse

to strike out the forfeiture and again give judgment for the
State, the respondents will be at liberty to apply for relief
under section 1205 of The Code, which may be granted to
such extent and upon such terms as the Court may deem
proper and just to the State and the respondents.

While we adhere strictly to the rule that a record cannot
be impeached collaterally, but must be accepted as importing
the exact truth until reversed or modified by some direct pro-
ceeding in the Court which has full possession and control
of it, we rest our decision upon the ground that the respond-
ents have, in effect, though not in the precise form of the
law, sought to have the record corrected, and their answer
and affidavits might well have been taken as an application
to be relieved of the forfeiture in that manner. The ruling
of the Court that the record could not be impeached collater-
ally was indeed correct, but we do not think it reached the
legal merits of this particular case. If we were proceeding
under The Code our way would be plain, as relief would be
granted upon the facts without regard to the form of the
prayer.

In early times, when a defendant failed to appear his de-
fault was recorded, and the recognizance, having become ab-
solute or forfeited, was estreated (extracted or taken from
the other records) into the Court of Exchequer to be sued in
behalf of the King, to whom the debt had become due uncon-
ditionally. 4 Blk., 253. But even in that Court the recog-
nizance might be discharged or compounded according to the
equity and circumstances of the case (1 Chitty Cr. Law, 4
Am. Ed., 106, note a), and by statute 4, Geo. III., chap. 10,
the Barons of the Exchequer were given power to discharge
recognizances and remit forfeitures and penalties. 1 Bac.
Ab., p. 597. Our statute (The Code, sec. 1205) is copied
substantially from 4 Geo. III., though the power of the
Court is somewhat amplified. It seems, therefore, to be the

policy of the law to lodge a very full and free discussion with the trial Judge so that he may virtually do, under the provisions of that law, what would be done if the forfeiture were set aside upon a finding that it does not state the truth. We would seem, therefore, to be refining too much if we should, under the circumstances of this case, refuse the respondents the opportunity to be heard and to show, if they can, that their principal punctually complied with his recognizance. We will insist on an observance of legal forms and procedure, but will give them the chance of doing in the manner prescribed by law what they evidently intended to do. It was early said to be for the advantage of public justice that it should be in the power of the judges to spare recognizances if, upon the circumstances of the case, they see fit. It may be that the record speaks the truth and should stand as it now is, and that the defendants are not even entitled to any favorable consideration or indulgence. These are matters for the Judge, and not for us, to decide.

The continuance of the case certainly did not release the recognizance. *State v. Smith, supra; People v. Hanaw,* 106 Mich., 421. We refrain from any intimation of opinion upon the other questions of law, as they may not again be presented, and if they are they can be considered more intelligently when all the facts are before us.

The case is remanded with directions to set aside the judgment upon the forfeited recognizance, to the end that the respondents may move to vacate the entry of forfeiture if they are so advised—the facts to be found by the Court and such judgment entered thereon as the law directs. If the Court refuses to set aside the forfeiture, the respondents shall have leave by petition to apply for such relief as, under section 1205 of The Code, the Court is authorized to grant in the exercise of its discretion. The appellants will pay the costs of this Court.

Remanded.